Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SABRINA HARROLD,

*Plaintiff,*

v.

CITY OF JERSEY CITY, *et al.,*

*Defendants.*

Civil Action No. 19-9566

OPINION

**John Michael Vazquez, U.S.D.J.**

Plaintiff Sabrina Harrold sues Defendants City of Jersey City ("Jersey City"), Mark Bunbury, Scott Carbone, Mark Albiez, and Stacey Flanagan ("Individual Defendants") (collectively, "Defendants") for violations of New Jersey's Conscientious Employee Protection Act, 42 U.S.C. § 1983, and 42 U.S.C. § 1985. D.E. 1. Currently pending before the Court is Defendants' motion to dismiss Plaintiff's Complaint. D.E. 7. The Court reviewed the parties' submissions[1] and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the following reasons, Defendants' motion to dismiss is **GRANTED**.

---

[1] Defendants' brief in support of their motion will be referred to as "Defs.' Br." (D.E. 7); Plaintiff's opposition will be referred to as "Pl.'s Opp." (D.E. 8); Defendants' reply will be referred to as "Defs.' Reply" (D.E. 11).

## I. BACKGROUND[2]

Since 2014, Plaintiff served as the Assistant Department Director of the Department of Recreation (the "Department") for Jersey City. Compl. at 3, ¶ 1.[3] In September 2015, Plaintiff was diagnosed with cancer and took medical leave pursuant to the Family and Medical Leave Act ("FMLA"). *Id.* at 3, ¶ 2. While on leave, Plaintiff was informed that other Department employees attempted to access her locked office. *Id.* In February 2016, the Department's Director, Kevin Williamson ("Williamson"), informed Plaintiff that she was no longer Assistant Director. *Id.* at 4, ¶ 3. Plaintiff claims she was "demoted and placed into a non-essential function." *Id.* In May 2017, surveillance cameras were installed outside of Plaintiff's office. *Id.* at 4, ¶ 5. Plaintiff complained about the cameras to a coworker. *Id.* Director Williamson and Defendant Bunbury[4] disciplined Plaintiff regarding her comments about the surveillance cameras. *Id.* at 4, ¶ 6.

In or about January 2018, Arthur Williams ("Williams")[5] became the new Director of the

---

[2] The factual background is taken from Plaintiff's Complaint, D.E. 1. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[3] Plaintiff restarts the numbering of her paragraphs at the beginning of each new section in her Complaint. *See* D.E. 1. As such, the Court cites first to the corresponding page number of the Complaint and then to the paragraph number on that page.

[4] Defendant Bunbury is described as the "HR Director." Compl. at 4, ¶ 6.

[5] Arthur Williams is not a named defendant in this matter. Plaintiff, however, refers to Arthur Williams as a defendant on at least three occasions throughout the Complaint. *See* Compl. at 1; *id.* at 5, ¶ 9; *id.* at 9, ¶ 3. It also appears that, in connection with her § 1983 claim, Plaintiff references a "Stacey Williams," perhaps conflating Stacy Flanagan and Arthur Williams. *Id.* at 10, ¶ 3. That said, should Plaintiff choose to amend her Complaint, she must clearly identify the parties against whom she asserts her claims.

Department. *Id.* at 5, ¶ 9. In February 2018, Williamson, the former Director, informed Plaintiff that the new Director, Williams, planned to transfer her out of the Department. *Id.* at 5, ¶ 10. In March 2018, Director Williams asked Plaintiff to assist with a payroll audit of the Department. *Id.* at 5, ¶ 11. Plaintiff and two other employees assisted with the audit, during which Plaintiff discovered that some employees were receiving paychecks to which they were not entitled. *Id.* at 5-6, ¶¶ 12-13. Plaintiff reported her findings to Director Williams. *Id.* at 6, ¶ 13. Based on her initial findings, Director Williams instructed Plaintiff to do a more extensive audit on the Department. *Id.* at 6, ¶ 14. Plaintiff completed this subsequent audit and again reported her findings to Director Williams. *Id.* at 6-7, ¶¶ 15-16. Director Williams informed Plaintiff that he would elevate Plaintiff's findings to the mayor of Jersey City, along with Defendant Albiez[6] and other members in Jersey City's government. *Id.* at 7, ¶ 16. Director Williams also met with Defendants Carbone and Bunbury to discuss Plaintiff's findings, but Defendants Carbone and Bunbury "appeared to be more concerned about Plaintiff's qualifications to conduct a[n] audit than Plaintiff's findings." *Id.* at 7, ¶ 18.

On or about April 6, 2018, an article was published in a local news outlet regarding the Department's alleged misappropriation of funds. *Id.* at 8, ¶ 19. Later that day, Director Williams informed Plaintiff that he had received a text message from the mayor "threatening [Director Williams'] job and threatening to conduct an investigation" into the Department to uncover who "was responsible for leaking the information" to the press. *Id.* On or about April 11, 2018, a second article appeared on social media regarding the Department's alleged misappropriation of funds. *Id.* at 8, ¶ 20. Later that day, Defendant Bunbury informed Plaintiff that she was being transferred to a different department. *Id.* Plaintiff claims that her transfer "was done in retaliation

---

[6] Defendant Albiez is described as the "Chef [sic] of Staff." *Id.* at 7, ¶ 16.

for Plaintiff's discovery and reporting of the misappropriation of funds" in the Department. *Id.* at 8, ¶ 21.

On or about April 16, 2018, Defendant Flanagan requested Plaintiff's "private medical FMLA information" from the payroll department and allegedly "conducted an examination of Plaintiff's medical information." *Id.* at 8-9, ¶ 22. Defendant Flanagan allegedly told another employee that she "was going to take care of Plaintiff and get rid of Plaintiff when Plaintiff returned to work." *Id.* at 9, ¶ 22. Plaintiff alleges that "since [her] whistleblowing activities," Plaintiff has "had her duties stripped, [] her office taken from her and placed in confined quarters, [and] been accused of faking illnesses[.]" *Id.* at 9, ¶ 24.

On April 11, 2019, Plaintiff filed a Complaint, alleging claims for violations of: (1) New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1, *et seq.*; (2) 42 U.S.C. § 1983; and (3) 42 U.S.C. § 1985. D.E. 1. Defendants moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 7. Plaintiff filed opposition, D.E. 8, to which Defendants replied. D.E. 11.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."

4

*Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## III. LAW AND ANALYSIS

Plaintiff brings three Counts against Defendants: (1) violation of CEPA; (2) violation of her constitutional rights pursuant to 42 U.S.C. § 1983; and (3) a conspiracy to violate her constitutional rights pursuant to 42 U.S.C. § 1985. Plaintiff appears to allege all Counts against Defendant Jersey City as well as the Individual Defendants.

### A. Count Two - § 1983

Plaintiff brings Count Two pursuant to 42 U.S.C. § 1983. Specifically, Plaintiff alleges that Defendants violated her (1) due process rights under the Fifth and Fourteenth Amendments,

5

and (2) free speech and association rights under the First Amendment.[7] Compl. at 10, ¶¶ 1-4.

Section 1983, in relevant part, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 does not provide substantive rights; rather, it provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). In order to state a claim under § 1983, a plaintiff must demonstrate that "(1) a person deprived [her] of a federal right; and (2) the person who deprived [her] of that right acted under color of state or territorial law." *Burt v. CFG Health Sys.*, No. 15-2279, 2015 WL 1646849, at *2 (D.N.J. Apr. 14, 2015).

### 1. § 1983 Claims Against Jersey City

Plaintiff alleges Count Two against Defendant Jersey City under the doctrine of *respondeat superior*. Compl. at 10, ¶ 3. Defendants argue that Plaintiff's claims under Count Two are *Monell* claims[8] that should be dismissed because Plaintiff fails to identify a municipal policy or custom that led to Plaintiff's injuries. Defs.' Br. at 14.

---

[7] The Court notes, as do Defendants, that Plaintiff's opposition does not address her § 1983 claims insofar as they relate to violations of her right to due process under the Fifth and Fourteenth Amendments or her right to association under the First Amendment. Rather, it appears that Plaintiff only addresses her First Amendment retaliation claim.

[8] In *Monell v. Dep't Soc. Servs. of City of N.Y.*, "the Supreme Court established that municipalities and other government entities were 'persons' subject to liability under 42 U.S.C. § 1983." *Noble v. City of Camden*, 112 F. Supp. 3d 208, 221 (D.N.J. 2015) (citing *Monell*, 436 U.S. 658, 690-92 (1978)).

6

While a municipality may be liable under § 1983, it cannot be held liable under a theory of *respondeat superior*. *See Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell*, 436 U.S. at 690-91). Rather, "[a] municipality may only be held liable under § 1983 if the plaintiff identifies a municipal 'policy' or 'custom' that was the 'moving force' behind the injury." *Jewell v. Ridley Twp.*, 497 F. App'x 182, 185 (3d Cir. 2012) (quoting *Monell*, 436 U.S. at 694). "In other words, the plaintiff must show that the municipality, through one of its policymakers, affirmatively proclaimed the policy, or acquiesced in the widespread custom, that caused the violation." *Noble v. City of Camden*, 112 F. Supp. 3d 208, 221 (D.N.J. 2015) (internal citation omitted). "A plaintiff may show the existence of a policy when a decision-maker with final authority issues an official proclamation, policy, or edict." *Id.* A "[c]ustom may be established by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (internal quotations omitted).

Additionally, a plaintiff must show that the unlawful policy or custom was the proximate cause of the plaintiff's injuries. In that regard, the United States Supreme Court has observed the following:

> As our § 1983 municipal liability jurisprudence illustrates, [] it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997); *see also Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007); *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

7

Here, Plaintiff's § 1983 claim against Jersey City is premised on the acts of its employees under the theory of *respondeat superior*. Compl. at 10, ¶ 3. As noted, *respondeat superior* not a permissible basis for a § 1983 claim against a municipality. *See Thomas*, 749 F.3d at 222. Rather, Plaintiff must demonstrate that the alleged deprivation of her federal rights was the result of a municipal policy or custom. *Id.* Plaintiff, however, fails to plausibly allege any policy or custom that deprived Plaintiff of any federal right. Instead, Plaintiff alleges in conclusory fashion that her alleged constitutional violations "were made by an official decision or decisions made . . . by one or more individuals vested with authority . . . to make such decisions" on behalf of Jersey City. Compl. at 10, ¶ 2. Such allegations are insufficient. *See, e.g., Purvis v. City of Newark*, No. 16-1830, 2017 WL 1032991, at *3 (D.N.J. Mar. 16, 2017) (dismissing claim against city because plaintiff failed to plausibly plead facts demonstrating a policy or custom); *Benjamin v. E. Orange Police Dep't*, 937 F. Supp. 2d 582, 596 (D.N.J. 2013) (same).

In her opposition, Plaintiff argues that "[e]ven a single decision made by a 'final policy making authority' . . . can constitute a 'policy' under Section 1983." Pl.'s Opp. at 13 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). Plaintiff is correct that, "[u]nder appropriate circumstances, [] a single act or decision by a municipal policymaker can impute liability to the municipality." *Majer v. Township of Long Beach*, No. 06-2919, 2009 WL 3208419, at *17 (D.N.J. Sept. 30, 2009) (quoting *Stomel v. City of Camden*, 927 A.2d 129, 134 (N.J. 2007)). As explained by the Supreme Court, however:

> [N]ot every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government

> policy respecting such activity before the municipality can be held liable.

*Pembaur*, 475 U.S. at 481-83 (internal citations and footnotes omitted). Here, Plaintiff fails to allege sufficient facts from which the Court could reasonably infer that any of the Individual Defendants had such authority to be deemed a "decisionmaker possess[ing] final authority to establish municipal policy with respect to [any] action" complained of by Plaintiff. *Id.* at 481. Accordingly, Plaintiff has not sufficiently pled a *Monell* claim as to any of her alleged constitutional deprivations, and therefore, the Court dismisses Count Two against Defendant Jersey City.

### 2. § 1983 Claims Against Individual Defendants

As an initial matter, Plaintiff does not indicate whether she is suing the Individual Defendants in their official capacities, personal capacities, or both. To the extent that Plaintiff is suing the Individual Defendants in their official capacities, the Court dismisses Plaintiff's § 1983 claims against the Individual Defendants as being duplicative of Plaintiff's § 1983 claim against municipal Defendant Jersey City. *See Rodriguez v. City of Camden*, No. 09-1909, 2011 WL 345918, at *5 (D.N.J. Feb. 2, 2011) ("A suit against a government official in his or her official capacity is synonymous with a claim against the government entity that employs him or her. . . . Claims asserted against both a government entity and the entity's agents in their official capacity warrant dismissal of the redundant official-capacity suits.") (quoting *Dull v. W. Manchester Tp. Police Dept.*, No 07-0307, 2008 WL 717836, at *7 (M.D. Pa. Mar. 17, 2008)). For the sake of completeness, however, the Court construes Plaintiff's § 1983 claims against the Individual Defendants in their personal capacities, and addresses those claims in turn.

### a. Fifth and Fourteenth Amendments – Due Process

Plaintiff brings a § 1983 claim for violation of her due process rights under the Fifth and Fourteenth Amendments. Compl. at 10, ¶ 2. From the outset, the Court dismisses Plaintiff's claim insofar as it concerns the Fifth Amendment because the Fifth Amendment is applicable only to federal officials, not municipal officials such as the Individual Defendants. *See Bergdoll v. City of York*, 515 F. App'x 165, 170 (3d Cir. 2013) (noting that the "Due Process Clause of the Fifth Amendment only applies to federal officials" and not to state or local officials) (citing *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983)). As such, Plaintiff's § 1983 claim for violation of due process under the Fifth Amendment is dismissed with prejudice.

With respect to Plaintiff's claim under the Fourteenth Amendment, Plaintiff does not allege – much less adequately explain – how she suffered any deprivation of due process. Indeed, Plaintiff does not even indicate whether she is asserting violations of *procedural* or *substantive* due process. *See* Compl. at 10, ¶ 2. Nonetheless, the Court will address both possible components. To state a claim that she was denied procedural due process, Plaintiff must allege that "(1) [she was] deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures afforded [her] did not constitute 'due process of law.'" *Houston v. Twp. of Randolph*, 934 F. Supp. 2d 711, 733 (D.N.J. 2013) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 255, 234 (3d Cir. 2006)). Thus, the first step is to "determine whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property." *Id.* "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. [She] must have more than a unilateral expectation of it. [She] must, instead have a legitimate claim of entitlement to it." *Baraka*, 481 F.3d at 205.

10

Here, the Complaint does not identify any individual interest upon which Plaintiff bases her procedural due process claim. Plaintiff's opposition, moreover, fails to address Plaintiff's procedural due process claim, much less explain her basis for it. Rather, the Complaint merely asserts in conclusory fashion that "[D]efendants violated Plaintiff's rights . . . to Due Process under the [] Fourteenth Amendment[.]" Compl. at 10, ¶ 2. Such conclusory statements are insufficient. As such, Plaintiff's procedural due process claim under the Fourteenth Amendment is dismissed.

To the extent that Plaintiff asserts a substantive due process claim under the Fourteenth Amendment, her claim fails for similar reasons. "Substantive due process is a doctrine reserved for egregious official conduct that trenches upon the most fundamental of civil liberties." *Armbruster v. Cavanaugh*, 410 F. App'x 564, 567 (3d Cir. 2011). Accordingly, "litigants face substantial burdens to show violations of substantive due process." *Childress v. City of Orange Township*, No. 14-4354, 2018 WL 1378722, at *13 (D.N.J. Mar. 19, 2018). For a substantive due process claim challenging the validity of non-legislative state action, a plaintiff must first establish that she has a protected, fundamental property interest. *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 139-42 (3d Cir. 2000). As noted, Plaintiff fails to identify any such property interest, much less a *fundamental* one. Accordingly, Plaintiff's substantive due process claim under the Fourteenth Amendment is also dismissed.

In sum, Plaintiff has not sufficiently pled any violation of due process, and therefore, Plaintiff's § 1983 claim is dismissed insofar as it is premised on due process violations under the Fifth and Fourteenth Amendments.

### b. First Amendment - Free Speech Retaliation

Plaintiff next alleges that Defendants violated her right to freedom of speech under the First Amendment. Compl. at 10, ¶ 2. Plaintiff's claim is premised on the theory that Defendants

11

retaliated against her for reporting the findings of the audit to her supervisor.[9] *Id.* at 8, ¶ 21 (alleging that Plaintiff's "transfer was done in retaliation for Plaintiff's discovery and reporting of the misappropriation of funds in the [] Department"); *see also* Pl.'s Opp. at 12 (explaining that Defendants' alleged retaliatory action was taken "after Plaintiff's report of fraudulent conduct which was a matter of public concern").

To bring a First Amendment retaliation claim under § 1983, Plaintiff "must show (1) that [she] engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising [] her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Furthermore, "to establish the required causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 133 (3d Cir. 2017) (citing *Lauren W.*, 480 F.3d at 267).

Regarding the requirement that the speech be protected, the Supreme Court has cautioned that "[w]hen a public employee sues a government employer under the First Amendment's Speech Clause, the employee must show that he or she spoke as a citizen on a matter of public concern." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 386 (2011) (citation omitted). This is a question of law. *Miller v. Clinton County*, 544 F.3d 542, 548 (3d Cir. 2008). "If an employee does not speak as a citizen, or does not address a matter of public concern, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public

---

[9] Plaintiff briefly mentions two news articles regarding the Department's alleged misappropriation, but she does not connect herself in any way to the articles. *See* Compl. at 8, ¶¶ 19-20. Accordingly, the articles cannot serve as the factual basis for her retaliation claim.

agency allegedly in reaction to the employee's behavior." *Guarnieri*, 564 U.S. at 386 (internal quotation omitted). Importantly, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

Here, Plaintiff argues that the protected speech in which she engaged was her reporting to Director Williams the results of her audit, *i.e.* the suspected misappropriation of public funds. *See* Compl. at 7-8, ¶¶ 16-21. However, Plaintiff was specifically instructed by Director Williams to perform the audit that uncovered the misappropriation. *Id.* at 5, ¶ 11. It follows that Plaintiff's reporting of the audit's findings to Director Williams was an act taken pursuant to her official duty. In other words, Plaintiff's reporting was speech taken "pursuant to [Plaintiff's] official duties," meaning that Plaintiff was "not speaking as [a] citizen[] for First Amendment purposes[.]" *Garcetti*, 547 U.S. at 421; *see also Morris v. Philadelphia Hous. Auth.*, 487 F. App'x 37, 40 (3d Cir. 2012) (upholding dismissal of plaintiff's First Amendment retaliation claim where plaintiff reported suspected embezzlement pursuant to his duties, noting that "because [plaintiff] complained to his superiors [] about matters arising in the scope of his employment duties, his speech did not have a 'relevant analogue to speech by citizens who are not government employees.'") (quoting *Garcetti*, 547 U.S. at 424)). Accordingly, Plaintiff's speech is not covered by the First Amendment, and therefore, the Court dismisses Plaintiff's § 1983 claim premised on retaliation under the First Amendment.

### c. First Amendment - Right to Association

Plaintiff also brings a § 1983 claim for violation of her right to associate under the First Amendment. Compl. at 10, ¶ 2. "The Supreme Court has long recognized that implicit in the right

13

to engage in activities protected by the First Amendment is a right to 'associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.'" *Coles v. Carlini*, 162 F. Supp. 3d 380, 394 (D.N.J. 2015) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984)). This "expressive associational right is reserved for groups that engage in some form of protected expression, and 'there is no constitutional right to associate for a purpose that is not protected by the First Amendment.'" *Id.* at 394 (quoting *Salvation Army v. Dep't of Comty. Affairs of New Jersey*, 919 F.2d 183, 199 (3d Cir. 1990)).

Here, Plaintiff fails to identify in her Complaint – or opposition – what "associational right" Defendants purportedly violated. Rather, the Complaint merely asserts the conclusory allegation that "[D]efendants violated Plaintiff's . . . associational rights under the First Amendment[.]" Compl. at 10, ¶ 3. Again, such conclusory statements are insufficient to plausibly plead a violation of one's right to associate under the First Amendment. Accordingly, the Court dismisses Plaintiff's § 1983 claim premised on a right to association under the First Amendment.

In sum, Plaintiff has not sufficiently pled any of her claims pursuant to § 1983. The Court therefore dismisses Count Two in its entirety as to all Defendants.

### B. Count Three - § 1985

Plaintiff also brings a claim for conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985. Compl. at 11, ¶¶ 1-4. To sufficiently plead a § 1985(3) claim, a plaintiff must establish:

> (1) a conspiracy; (2) for the purpose of depriving a person or class of persons equal protection under the law or equal privileges and immunities under the law; (3) an act in furtherance of the conspiracy; and (4) injury to a plaintiff's property or his person, or deprivation of a right or privilege of a U.S. citizen.

*McArdle v. Hufnagel*, 588 F. App'x 118, 120 (3d Cir. 2014). Section 1985(3)[10] actions are limited to conspiracies predicated on "racial, or perhaps otherwise class based, invidiously discriminatory animus." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997); *Falat v. County of Hunterdon*, No. 12-6804, 2014 WL 6611493, at *13 (D.N.J. Nov. 21, 2014) ("The conspiracy must be directed at the plaintiff because he belongs to a given class."). Additionally, a claim for conspiracy "must contain supportive factual allegations." *Ivan v. County of Middlesex*, 595 F. Supp. 2d 425, 484 (D.N.J. 2009). Mere conclusory allegations that a conspiracy exists will not survive a motion to dismiss. *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 605 (D.N.J. 2002).

Here, Plaintiff has not plausibly pled the existence of a conspiracy under § 1985. In fact, Plaintiff does not allege a conclusory claim of conspiracy, much less the necessary plausible facts to properly allege such a conspiracy. Moreover, Plaintiff fails to plead any "invidiously discriminatory animus" driving the purported conspiracy, or the purpose of such conspiracy. Put simply, Plaintiff does not sufficiently plead any of the elements necessary for a § 1985 conspiracy and the Complaint is devoid of facts suggesting that the events of which Plaintiff complains were motivated by a racial or otherwise invidiously discriminatory animus. Accordingly, Plaintiff's §1985 claim is dismissed as to all Defendants.[11]

---

[10] Plaintiff does not specify under which subsection of § 1985 she brings her claim. *See* Compl. at 11. However, it appears that the only provision applicable to Plaintiff's allegations is § 1985(3).

[11] Plaintiff raises for the first time in her opposition that she is a "black woman" and the individual she reported as responsible for misappropriating funds is "non-black." Pl.'s Opp. at 10. To the extent Plaintiff's "animus theory" rests upon such facts, however, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Guers v. Jones Lang LaSalle Americas, Inc.*, No. 13-7734, 2014 WL 4793021, at *3 (D.N.J. Sept. 25, 2014) (quoting *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)). As such, the Court will not consider new claims or factual allegations in Plaintiff's opposition brief that were not included in her Complaint.

## C. Count One – CEPA

Plaintiff's remaining claim is for violation of CEPA. However, Plaintiff's only basis for subject matter jurisdiction rests on federal question jurisdiction.[12] While the Court has supplemental jurisdiction over Plaintiff's state-law CEPA claim pursuant to 28 U.S.C. § 1367(a), § 1367(c) gives district courts discretion to decline to hear state law claims that they would otherwise have supplemental jurisdiction over through § 1367(a). Specifically, § 1367(c)(3) provides that a "district court[] may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." When federal claims are dismissed at an early stage of litigation, courts generally decline to exercise supplemental jurisdiction over the remaining state-law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Here, at the earliest possible stage of the proceedings, the Court is dismissing Plaintiff's federal claims, which provided the Court with federal question jurisdiction. Accordingly, the Court uses its discretion pursuant to § 1367(c) and declines to exercise its supplemental jurisdiction over Plaintiff's remaining state-law CEPA claim. Therefore, Count One is dismissed.

## IV. CONCLUSION

In sum, the Court **GRANTS** Defendants' motion to dismiss, D.E. 7. Plaintiff has thirty (30) days to file an Amended Complaint, if she so chooses, consistent with this Opinion. If

---

[12] The Court notes that the Complaint appears to base its subject matter jurisdiction upon diversity jurisdiction. Compl. at 1, ¶ 1 ("This court has jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy is greater than $75,000.00."). However, at a minimum, both Plaintiff and Defendant Jersey City are citizens of New Jersey. *Id.* at 1. Plaintiff does not indicate the domiciles of the Individual Defendants, instead conflating their domiciles with the address of Defendant Jersey City. *See id.* ¶¶ 3-7. As such, the Court does not have diversity jurisdiction. Nonetheless, because Plaintiff brings claims under § 1983 and § 1985, the Court does have federal question jurisdiction pursuant to 28 U.S.C. § 1331.

16

Plaintiff fails to do so, then the dismissal of the Complaint will be with prejudice. An appropriate Order accompanies this Opinion.

Date: March 24th, 2020

                                                        John Michael Vazquez, U.S.D.J.